
EMERSON

March 11, 2013

Flextronics International USA, Inc.
6201 America Center Drive
San Jose, CA  95002
Ladies/Gentlemen:

In connection with the evaluation of our Embedded Computing and Power business (the "Business") by the undersigned and/or one or more of its subsidiaries or affiliates (collectively, the "Purchaser"), Emerson Electric Co. ("Emerson") is providing the Purchaser with certain information concerning the Business. Purchaser hereby agrees to treat all Evaluation Material (as defined below) in accordance with the provisions of this agreement (this "Agreement") and to comply with the covenants and restrictions set forth in this Agreement.

    1.  Definitions.

    (a)    The term "Evaluation Material" means any information concerning the Business and Emerson provided by or on behalf of Emerson in connection with the Possible Transaction, including without limitation information concerning financial results, actual or projected sales or profits, products, services, properties, equipment, software code, technology, and other intellectual property, customer and client lists, vendor relationships, pricing policies, employment records and policies, sales organizations, production processes, operational methods, marketing plans and strategies, facility or product development techniques or plans, technical, manufacturing, testing and product data, and business acquisition plans (whether any such information was prepared by Emerson, the Business or its Representatives (as defined below) or otherwise and irrespective of the form of the information or the manner in which it is communicated) furnished to Purchaser or its Representatives on or after the date above by or on behalf of Emerson, together with all notes, analyses, compilations, studies, interpretations or other material prepared by Purchaser or its Representatives that contain, reflect or are based on any Evaluation Material furnished to Purchaser or its Representatives. The term "Evaluation Material" does not include information  (i) is or becomes generally available to the public other than as a result of a disclosure by Purchaser or any of its Representatives in violation of this Agreement, (ii) is already in Purchaser's possession or becomes available to Purchaser on a non-confidential basis from a source other than Emerson or its Representatives, provided that such source was not known at or before the time the information was provided to Purchaser to be under any direct or indirect contractual, legal or fiduciary obligation of confidentiality to Emerson or another person with respect to such information (iii) was known to Purchaser on a non-confidential basis prior to its disclosure to Purchaser by or on behalf of Emerson, or (iv) was or is independently developed by or for Purchaser or its Representatives without reference to any Evaluation Material. Notwithstanding any provision to the contrary contained in this Agreement, the disclosure or use of information that constitutes Evaluation Material and that is also provided to Purchaser or any of its Representatives by or on behalf of Emerson in connection with a matter other than the Possible Transaction, including, without limitation, any commercial relationship or dispute, in a manner that is not prohibited by any agreement governing the provision of that information to Purchaser or its Representatives shall not constitute a breach of this Agreement.

    (b)    The term "person" as used in this Agreement is to be broadly interpreted to include, without limitation, any corporation, company, partnership, unincorporated association,

**Exhibit A**

individual or governmental body or other entity. "Representatives" shall be defined to mean only those persons and their subsidiaries, parents, directors, officers, employees, agents and their legal, accounting and financial advisors to whom the Evaluation Material or the type of information referred to in Section 2(b) has been or hereafter is provided or who are otherwise aware of the Possible Transaction. Notwithstanding anything to the contrary contained herein, Purchaser may not disclose the Evaluation Material or portions thereof to the Representatives of any current or prospective equity and/or debt financing sources without the prior written consent of Emerson.

(c)     The term "Possible Transaction" means a potential transaction relating to the purchase of, investment in, or other similar extraordinary transaction relating to, the Business between Emerson and Purchaser and the terms thereof.

2.  Use of Evaluation Material.

(a)     Purchaser agrees that the Evaluation Material shall be used solely for the purpose of evaluating the Possible Transaction, that the Evaluation Material shall be kept strictly confidential and that Purchaser shall not disclose, and shall cause its Representatives not to disclose, any of the Evaluation Material to any person in any manner whatsoever; provided, however, that any of the Evaluation Material may be disclosed to Purchaser's Representatives who are actively and directly participating in, and who need to know such information for the purpose of, evaluating the Possible Transaction, but only to such Representatives who are informed of, and who have agreed to be bound by the terms of, this Agreement. Notwithstanding the foregoing, with respect to the Evaluation Material Emerson believes is unusually sensitive due to commercial, legal or other factors, as a condition to the provision of such Evaluation Material to Purchaser, Emerson and Purchaser will agree upon a limited number of specific individuals to receive such Evaluation Material. Purchaser shall be responsible for any breach of this Agreement by it or its Representatives and agrees to use commercially reasonable efforts to restrain its Representatives from prohibited or unauthorized disclosure or use of any Evaluation Material or any disclosure of the Possible Transaction.

(b)     In addition, without the prior written consent of the other party, neither party nor its Representatives shall disclose to any person either the fact that there is interest by either party in the Possible Transaction, or any of the terms, conditions or other facts with respect thereto, including the status thereof, or that the Evaluation Material exists or has been made available to Purchaser, except as may be required by law or regulation, legal or regulatory proceeding (including, without limitation, oral questions, interrogatories, requests for information or documents, subpoena, civil investigative demand or similar process) or by the rules of any recognized stock exchange, subject to compliance with the procedures set forth in Section 2(e) below (which, in the case of Emerson, shall apply *mutatis mutandis*).

(c)     Purchaser hereby confirms that it is not acting as a broker for or representative of any person and is considering the Possible Transaction only for its own account. Purchaser hereby confirms that Purchaser, its affiliates or any of its Representatives have not entered into, directly or indirectly, any agreements, arrangements or understandings with any person (other than any of its Representatives) with respect to a Possible Transaction involving any portion of the Business or its assets or that could otherwise affect such third party's decisions or actions with respect to a Possible Transaction involving any portion of the Business or its assets. Purchaser agrees that without Emerson's prior written consent, Purchaser, its affiliates or any of its Representatives will not act as a joint bidder or co-bidder with any other person with respect to a Possible Transaction or enter into, directly or indirectly, any negotiations, agreements or understandings with any person or entity (other than any of its Representatives) with respect to a

CONFIDENTIAL
001341-0001-10713-13791015

Possible Transaction involving any portion of the Business or its assets or that could otherwise affect such third party's decisions or actions with respect to a Possible Transaction involving any portion of the Business or its assets.

(d)     Without limiting the foregoing, Purchaser agrees that it and its affiliates will not, without the prior written consent of Emerson, enter into any exclusive arrangement with a source of capital or financing (whether debt, equity or otherwise), in connection with a Possible Transaction with Emerson. For purposes of this Agreement, any agreement, arrangement or understanding, whether written or oral, with any potential source of capital or financing (whether debt, equity or otherwise), that does, or could be reasonably expected to, legally or contractually limit, restrict or otherwise impair in any manner, directly or indirectly, such source from consummating a transaction involving Emerson or any of its affiliates or acting as a potential source of capital or financing (whether debt, equity or otherwise) to any other party with respect to a potential transaction with Emerson or any of its affiliates shall be deemed an exclusive arrangement.

(e)     In the event that Purchaser is required by applicable law, regulation or legal process or proceeding (including, without limitation, oral questions, interrogatories, requests for information or documents, subpoena, civil investigative demand or similar process) or by the rules of any recognized stock exchange to disclose any Evaluation Material, Purchaser shall give Emerson prompt written notice of such request so that Emerson may seek an appropriate protective order or other appropriate remedy, or in Emerson's sole discretion, waive compliance with the terms of this Agreement. Purchaser and its Representatives agree to cooperate with Emerson at Emerson's sole expense to obtain a protective order or other appropriate remedy with respect to such Evaluation Material. In the event that no such protective order or other remedy is obtained, or that Emerson waives compliance with the terms of this Agreement, Purchaser shall (i) disclose only that portion of the Evaluation Material which Purchaser is advised by its outside counsel Purchaser is legally required to disclose, (ii) provide Emerson with prompt written notice in advance of any such disclosure, and (iii) shall use all commercially reasonable efforts at Emerson's sole expense, to obtain an order or other assurance that confidential treatment will be accorded to the Evaluation Material disclosed.

3.     Purchaser Inquiries; Internal Disclosure.

(a)     Neither Purchaser nor any of its Representatives shall contact, directly or indirectly, any director, officer, employee, customer, supplier vendor or landlord of Emerson and the Business regarding the Possible Transaction without the prior written consent of Emerson. All (i) contacts by Purchaser or its Representatives with Emerson or the Business regarding the Possible Transaction or the Evaluation Material, (ii) requests for additional Evaluation Material, (iii) requests for facility tours or management meetings and (iv) discussions or questions regarding procedures shall be made through Dan Schafer (at daniel.schafer@jpmorgan.com or (212) 622-4235), or Mike Macakanja (at michael.macakanja@jpmorgan.com or (312) 732-7160).

(b)     Purchaser shall cause all of its Representatives to treat all of the Evaluation Material in strict accordance with the terms of this Agreement that are applicable to its Representatives and shall be responsible for their compliance provided, however, that the second sentence of Section 4(a) of this Agreement shall not apply to any of Purchaser's Representatives who are unaffiliated, third party Representatives of Purchaser. Purchaser shall take, and shall require all of its Representatives to take, all reasonable efforts to preserve the confidentiality of the Evaluation Material, including but not limited to: (i) maintaining all such Evaluation Material in a manner so as to preclude unauthorized persons from having access thereto, and (ii) permitting

access to Evaluation Material only as necessary for Purchaser's use in accordance with the terms of this Agreement.

4.   Other Restrictions.

(a)   By disclosing information to Purchaser or its Representatives, Emerson does not grant any express or implied right to anyone to, or under, any patent, patent application, copyrights, trademarks, service marks or other intellectual property rights or trade secrets. Purchaser and its Representatives are granted only a personal, non-assignable, non-exclusive, fully revocable license to use and copy, in strict accordance with the terms and conditions of this Agreement, the Evaluation Material furnished to it or them hereunder. Not in limitation of any provision of this Agreement, neither Purchaser nor any of its Representatives (excluding unaffiliated, third party Representatives of Purchaser) who are aware of the Evaluation Material and the possibility of the Possible Transaction shall (or shall attempt to), directly or indirectly, for a period of two (2) years after the date of this Agreement, except with the express prior written consent of Emerson, solicit for employment or hire (or cause or seek to cause to leave the employ of Emerson or the Business) any person who is now employed by Emerson or the Business whom Purchaser or its Representatives meet during the evaluation of the Possible Transaction or about whom Purchaser or its Representatives receive Evaluation Material or who is currently employed by the Business in an executive, technical, sales or marketing position, provided however, that notwithstanding the foregoing, Purchaser shall not be prohibited from placing in circulation any general solicitation through the media or third party recruiting firms not directed toward the employees of Emerson or the Business or from hiring employees as a result of such general solicitation.

(b)   Purchaser agrees that, for a period of two (2) years from the date of this Agreement, without the prior written consent of Emerson, neither Purchaser nor any of its affiliates will, directly or indirectly, hold any discussions regarding the Business with any supplier to or customer of the Business, other than Emerson's Representatives or Purchaser's Representatives as otherwise provided herein; provided that the foregoing provision will not prevent Purchaser or any of its affiliates from holding discussions that (i) do not relate to a Possible Transaction and that are in the ordinary course of business consistent with past practices, with persons that Purchaser or any of its affiliates have a relationship prior to the date hereof, or (ii) do not relate to a Possible Transaction and arise out of the conduct of due diligence on any such supplier or customer in connection with a potential acquisition, investment or joint venture (or similar transaction) by Purchaser or any of its affiliates of, in or with any such supplier or customer, subject, for the avoidance of doubt, to Purchaser's compliance with the obligations set forth in this Agreement regarding the disclosure and/or use of Evaluation Material and the type of information referred to in Section 2(b).

5.   Return of Evaluation Material. If Purchaser decides that it does not wish to proceed with the Possible Transaction, Purchaser shall promptly inform Emerson in writing of that decision. In that case, or at any time upon Emerson's request, Purchaser will, and will cause its Representatives to, (at Purchaser's sole expense), except as described herein, promptly return to Emerson or, at Purchaser's sole option, destroy all written Evaluation Material and will not retain any copies, extracts, recordings (whether recorded by tape, disc, computer or other means) or other reproductions in whole or in part of such Evaluation Material. Notwithstanding the foregoing, that portion of the Evaluation Material which consists of summaries, analyses, compilations, data, studies or other documents prepared by Purchaser or Purchaser's Representatives, or any copies of the Evaluation Material that cannot be readily deleted from Purchaser's systems, will be maintained as confidential in accordance with the terms of this

4

Agreement for so long as Purchaser is required by its record retention policies to maintain copies of such information provided that such information shall only be accessible by Purchaser's legal or information technology departments. In addition, Purchaser shall be entitled to retain on a confidential basis in accordance with the terms of this Agreement one copy of the Evaluation Material to the extent required to comply with legal, regulatory or policy requirements provided that such information shall only be accessible by Purchaser's legal department and others with a need to know or business responsibility for administering such legal, regulatory or policy requirements. Notwithstanding the destruction or return of the Evaluation Material, Purchaser and its Representatives shall continue to be bound by the obligations of confidentiality and other obligations under this Agreement.

6.  Acknowledgments. Purchaser acknowledges that neither Emerson nor any of its Representatives make any representation or warranty, express or implied, as to the accuracy, usefulness or completeness of the Evaluation Material and that neither Emerson nor any of its Representatives shall have any liability to Purchaser or to any of its Representatives relating to, or resulting from the use of, the Evaluation Material or any of the information contained therein, or regarding any failure to provide any updated, additional or other information, except as set forth in a definitive executed agreement between the parties. Purchaser hereby acknowledges that it is aware, and that it will advise its affiliates and Representatives, that (i) as a result of Purchaser's receipt of the Evaluation Material, Purchaser may be in possession of material, non-public information relating to Emerson and the Business, and (ii) the United States securities laws ("Securities Laws") prohibit any person who has material, non-public information about a company from dealing in securities of that company or from communicating such information to any other person under circumstances in which it is reasonably foreseeable or likely that the other person may deal in any of those securities while the relevant information remains non-public.

7.  Procedures. The parties shall be free to structure, define and conduct the proceedings and negotiations for the Possible Transaction, including applicable terms, conditions and procedures, as they may determine at anytime in their sole discretion. Except with respect to any obligation of Purchaser, such terms, conditions and procedures may be changed at any time in the sole discretion of Emerson or its Representatives without notice to Purchaser or any other person, and Purchaser and its Representatives shall not have any claim whatsoever against Emerson and/or its Representatives or shareholders arising out of or relating to the Possible Transaction, or the lack thereof, other than with respect to binding provisions of a signed letter of intent. Either party may, in its sole discretion, terminate its consideration of the Possible Transaction, or Purchaser's potential involvement therein, as well as Purchaser's access to the Evaluation Material, at any time. At all times, until the closing of the Possible Transaction, Emerson and its shareholders shall be and remain free to pursue other opportunities with respect to the Business, or transactions with other parties with respect to the Business, or any of its subsidiaries or assets, or to enter into sales agreements or other contracts with respect thereto without prior notice to Purchaser, except as set forth in a definitive executed agreement between the parties or the binding provisions of a signed letter of intent.

8.  Written Agreement. This Agreement sets forth the entire understanding between the parties with respect to the subject matter hereof, but does not supersede any other confidentiality or other agreement between the parties regarding matters other than the Possible Transaction, if any, which shall remain in full force and effect in accordance with their terms independent of, but not in limitation of, this Agreement. No agreement providing for the Possible Transaction will be deemed to exist unless and until a definitive agreement therefor has been executed and delivered by each of Purchaser and Emerson (the "Definitive Agreement") other than with respect to binding provisions of a signed letter of intent. Unless and until a Definitive Agreement has been

CONFIDENTIAL
001341-0001-10713-13791015

so executed and delivered, neither Purchaser nor Emerson nor any of their respective Representatives have any legal obligation of any kind to the other party with respect to the Possible Transaction, whether because of this Agreement or any other written or oral expression with respect to the Possible Transaction or otherwise, except for the matters specifically agreed to herein or in any binding provisions of a signed letter of intent. Each of the Purchaser and Emerson acknowledges and agrees that each party reserves the right in its sole discretion to reject any and all proposals made by the other party or its Representatives with regard to the Possible Transaction and to terminate discussions and negotiations with the other party at any time and for any or no reason. The obligations contained in this Agreement shall be binding and shall survive the termination of any discussion or business relations between Purchaser and Emerson for the period of time specified in Section 14.

9.   <u>Remedies</u>.  Each party agrees that money damages would not be a sufficient remedy for any breach of this Agreement by the other party or its Representatives, and that, in addition to all other remedies, the non-breaching party shall be entitled to seek specific performance and injunctive or other equitable relief as a remedy for any such breach.  Each party further agrees that the non-breaching party shall not be required to secure or post any bond in connection with such remedy or relief.   In the event of any litigation arising under this Agreement, the prevailing party shall be entitled to recover its reasonable attorneys' fees and costs incurred therein.  No failure or delay by either Emerson or the Purchaser in exercising any right hereunder will operate as a waiver thereof, nor shall a single or partial exercise preclude further or other exercise thereof.

10.   <u>Assignment</u>.  Any assignment of this Agreement by Purchaser without Emerson's prior written consent shall be void.

11.   <u>Governing Law</u>.  This Agreement shall be governed by and construed and enforced in accordance with the laws (both substantive and procedural) of the State of New York, without giving effect to its conflict of laws principles or rules.  Each party hereby agrees to personal jurisdiction and proper venue in the federal and state courts of New York, New York with respect to any action to enforce this Agreement, or for any remedy for breach thereof.

12.   <u>Jury Waiver</u>.  IN THE EVENT OF ANY DISPUTE BETWEEN THE PARTIES, WHETHER IT RESULTS IN PROCEEDINGS IN ANY COURT IN ANY JURISDICTION OR IN ARBITRATION, THE PARTIES HEREBY KNOWINGLY AND VOLUNTARILY, AND HAVING HAD AN OPPORTUNITY TO CONSULT WITH COUNSEL, WAIVE ALL RIGHTS TO TRIAL BY JURY, AND AGREE THAT ANY AND ALL MATTERS SHALL BE DECIDED BY A JUDGE OR ARBITRATOR WITHOUT A JURY TO THE FULLEST EXTENT PERMISSIBLE UNDER APPLICABLE LAW.

13.   <u>Miscellaneous</u>.  This Agreement and any amendment hereto shall be binding upon and enforceable against Purchaser's successors and permitted assigns, and shall inure to the benefit of Emerson's successors and assigns.  No waiver of any provision of this Agreement shall be effective unless it is in writing and signed by the party against whom it is asserted, and any such written waiver shall only be applicable to the specific instance to which it relates and shall not be deemed to be a continuing or future waiver.  Purchaser and Emerson shall execute and deliver such instruments and do such further acts or things as may be required to carry out the full intent and purposes of this Agreement.  Purchaser hereby irrevocably agrees that no attempted amendment, modification, termination, discharge or change to this Agreement shall be valid or effective unless the undersigned and Emerson shall have agreed in writing to such Amendment. Each of the Purchaser and Emerson represent and warrant that it has full power and authority to execute and deliver this Agreement, and perform all of its obligations hereunder, and that the

CONFIDENTIAL
001341-0001-10713-13791015

individual signing this Agreement on each such party's behalf has been duly authorized to do so. A document signed and transmitted by facsimile or other electronic transmission shall be deemed and treated as an original and shall have the same binding effect as an original signature on an original document. If any provision of this Agreement is found to violate any statute, regulation, rule, order or decree of any governmental authority, court, agency or exchange, such invalidity shall not be deemed to affect any other provision hereof or the validity of the remainder of this Agreement, and such invalid provision shall be deemed deleted herefrom to the minimum extent necessary to cure such violation.

14. <u>Expiration</u>. Except as provided for in Section 4 or 5 of this Agreement, this Agreement and the rights and obligations hereunder shall expire and be of no further force or effect on the third (3rd) anniversary of the date of this Agreement.

Very Truly Yours,

Alan Mielcusny
Vice President, Development

ACCEPTED AND AGREED as of the date first written above:

"Purchaser"

By: _____
Name:  Brian Maddox
Title:  VP, Finance
Company:  Flextronics International USA, Inc.

CONFIDENTIAL
001341-0001-10713-13791015